NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
:
DEBORAH HOWELL,                  :
                                 :
       Plaintiff,           :       Hon. Dennis M. Cavanaugh
                                 :
       v.                   :       **OPINION**
                                 :
JO ANN B. BARNHART,              :
COMMISSIONER OF SOCIAL           :       Civil Action No.: 04-4458
SECURITY,                        :
                                 :
       Defendant.           :
_____:

DENNIS M. CAVANAUGH, U.S.D.J.

       This matter comes before the Court upon Deborah Howell's ("Plaintiff") appeal from the Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This matter is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. After reviewing all of the submissions by both parties and for the reasons stated below, this Court finds that the Commissioner's decision is based on a complete analysis supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## I. BACKGROUND

       Plaintiff, born September 18, 1960, completed high school and one year of college. She worked as a home health aide for fifteen years, a position that involved bathing, feeding, and helping patients in and out of bed. Plaintiff alleges she has been disabled and unable to work

since May 3, 2001.

## A. Procedural History

Plaintiff filed an application for DIB on July 23, 2001, alleging disability since May 3, 2001. (R. at 45.) That application was denied initially and on reconsideration. (R. at 24-32). Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on October 17, 2003. (R. at 37). In a decision dated October 31, 2003, the ALJ determined Plaintiff was not disabled. (R. at 15-21). The Appeals Council affirmed the ALJ's decision on July 16, 2004. (R. at 5-7). On September 15, 2004, Plaintiff filed an appeal before this Court to review the final decision of the Commissioner.

## B. Factual History

### 1. Medical Records Relating to Plaintiff's Disability Claim

Plaintiff has a history of osteoarthritis, knee, and back pain. (R. at 126). She is obese with high blood pressure and has a history of depression and fatigue syndrome. (Id.) Plaintiff has been under the care of Dr. Michael Badin since 1991. (R. at 126). Plaintiff first experienced knee problems in 1997. (Pl.'s Br. at 3). She was diagnosed with a meniscal tear of the left knee and underwent surgery on June 2, 1997. (R. at 107). Subsequent to this surgery, Plaintiff was involved in a car accident which necessitated a second surgery on December 11, 1997. (Id.) Both surgeries were performed by Dr. Mitchell Steinway. (Plaintiff's Br. at 4). Prior to the second surgery, Dr. Steinway took x-rays of Plaintiff's left knee which revealed osteoarthritis in the knee. (Id.)

Dr. Badin continued to treat the Plaintiff. (Pl.'s Br. at 5). His medical notes, dating from 1988 through 2000, reveal a diagnosis of osteoarthritis, hypertension, continued obesity, and a

recommendation that Plaintiff lose weight. (R. at 174, 184-195.)  Plaintiff, however, was unable to lose weight and gained approximately 100 pounds over two years. (Id.)

On May 3, 2001, Plaintiff underwent a third surgery, performed by Dr. Steinway, on her left knee. (R. at 120-121).  Post-operative diagnosis revealed a later meniscal tear with osteoarthritis of both lateral and medial compartments. (Id.)  After this surgery, Plaintiff claimed disability and did not return to work. (Id.)  She continued to see Dr. Badin, who recommended that she have a total knee replacement. (R. at 126).  This surgery, however, could not be performed until Plaintiff lost a significant amount of weight as the surgery necessitated post-operative physical therapy. (Id.)

Dr. Badin certified to the New Jersey Department of Labor that in his ten years treating the Plaintiff, she had suffered from hypertension, obesity, back pain, arthritis, depression, fatigue syndrome, and knee problems. (Id.)  She has a limited range of motion and cannot walk for long periods of time because of pain in both knees. (R. at 126-27).  Dr. Badin also stated that Plaintiff's medical problems caused her to be disabled from performing or engaging in activities involving prolonged standing or any kind of physical exertion.  (Id.)

On December 3, 2001, Dr. Vasallo performed a consultative exam for the Social Security Administration. (R. at 198).  Dr. Vasallo noted that Plaintiff complained of pain in both knees and her right shoulder; she also had difficulty reaching backwards. (R. at 199).  He further noted that Plaintiff was 5'7"and weighted over 350 pounds, which he characterized as  "morbidly obese." (Id.)  Dr. Vasallo found limitations in Plaintiff's range of motion in her shoulder, knees, and hip. (R. at 202-203).  Dr. Vasallo also found that Plaintiff could not stand or walk for prolonged periods of time but she did not require an assistive device for walking.  The doctor

also noted that Plaintiff was able to use her hands for gross manipulation. (Id.)

Dr. Block performed a consultative exam for the Social Security Administration on December 6, 2001. (R. at 204). He found that there was no history of substance abuse or dependence by Plaintiff, but that she uses sleeping pills when she is having difficulty sleeping. (R. at 205). Dr. Block further found that Plaintiff's capacity for understanding and memory was minimally impaired as was her ability to concentrate. (Id.) He noted she was minimally impaired with regard to social interaction and diagnosed Plaintiff with depression. (Id.)

Plaintiff was examined by Dr. Oleg Frank. (R. at 214). Plaintiff told Dr. Frank that she has occasional stiffness in her hands, a history of glaucoma, and high blood pressure. (R. at 214-15). Dr. Frank noted that due to recent weight gain and obesity, Plaintiff's arthritis had worsened. Plaintiff was able to sit, stand, and walk short distances accompanied with a cane, as well as lift, carry and handle small objects, speak, and travel. (R. at 214-15).

**2. Plaintiff's Testimony**

Plaintiff testified that she was a home health aide for fifteen years, and did no other work during that time. (R. at 16). She stated that she stopped working after undergoing a third surgery to her left knee, explaining that she was unable to work due to pain. (R. at 17). She claims to have pain in her lower back and right shoulder, and her hands cramp on occasion. (Id.) She takes medication for high blood pressure, a condition she has had for eight years. (Id.) She also has asthma, which started around May of 2003. Plaintiff uses an assistive pump to control her asthma. (Id.) She has glaucoma and has had two surgeries performed on her eye. (Id.) Plaintiff testified to having some depression and taking the prescribed anti-depressant Paxil. (Id.)

Plaintiff lives with her three children ages 20, 17, and 12. (Id.) According to Plaintiff, she

4

does not do house work. She instructs her children on how to cook, but does not participate, finding the pots too heavy. She does the grocery shopping with someone else in case her knee fails. On Sundays, she drives to church and takes her youngest son to camp. (Id.) Plaintiff alleges that she can only drive one hour. (Id.) She climbs three flights of stairs to her apartment daily, using her cane and resting every flight. (Id.)   Plaintiff stated that she can lift and carry ten to fifteen pounds. (Id.) She takes 800 mg of Ibuprofen for pain and a variety of prescription medications. (Id.)

### 3. The Decision of the ALJ

After recounting and analyzing the facts above, the ALJ determined Plaintiff was not disabled within the meaning of the Act and therefore denied her application for disability benefits. (R. at 17). Specifically, the ALJ found Plaintiff suffered from a severe impairment involving arthritis of the knees and the residual effects of multiple knee surgeries, obesity, hypertension, and bursitis of the right shoulder, but the evidence failed to establish any impairments involving vision, asthma, headaches, or depression that have a greater than slight effect on her ability to perform basic work activities.

Moreover, the ALJ concluded that although Plaintiff suffers from a severe impairment, no medical findings meet in severity the clinical criteria of any impairment listed in the Act. (R at 18.)   The ALJ stated that Plaintiff could still engage in gainful employment in a sedentary occupation. (R. at 19). In reaching this decision, the ALJ decided not to accord significant weight to Plaintiff's subjective complaints or to Plaintiff's treating physician Dr Badin. (Id.) Rather, the ALJ relied on objective medical evidence in the record. (R. at 18-20).

5

## II. STANDARD OF REVIEW

### A. Standard for Entitlement to Benefits under the Act

A claimant is entitled to benefits under the Act only if he/she satisfies all the relevant requirements of the statute. To establish a valid claim for disability insurance benefits, the claimant must meet the insured status requirements of 42 U.S.C. §423(c) and the income and resource limitations of 42 U.S.C. §1382(a) and §1382(b), respectively. Finally and essentially, the claimant must demonstrate that she was disabled within the meaning of the Act.

### B. Analysis for Determining Disability

Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. §423(d)(1)(A); see also 42 U.S.C. §1382c(a)(3)(A). Physical or mental impairments are those that "result from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3); U.S.C. §1382c(a)(3)(A). Furthermore, an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he not only is unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" 42 U.S.C. §423(d)(2)(A).

Social Security regulations provide a five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. §404.1520. First, the Commissioner must inquire whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R.

§404.1520(a)(4)(i). If claimant is found to be currently engaged in substantial gainful activity, he will be found not disabled, without consideration of his medical condition. 20 C.F.R. §404.1520(b). Second, if claimant is not engaged in substantial gainful activity, the Commissioner must decide whether claimant suffers a severe impairment. 20 C.F.R. §404.1520(a)(4)(ii). If the impairment is not severe, the claimant will be found not disabled. 20 C.F.R. §404.1520(c). Third, if the claimant is found to be suffering from a severe impairment, the Commissioner must decide whether the impairment is equivalent or exceeds in severity one of the impairments listed in Appendix I of the regulations. 20 C.F.R. §404.1520(a)(4)(iii). If the impairment is listed or is the equivalent to a listed impairment, the Commissioner must find the claimant disabled without consideration of the facts. 20 C.F.R. §404.1520(d). Fourth, if the impairment is not listed, the Commissioner must consider whether the claimant has sufficient residual functional capacity to perform his past work. 20 C.F.R. §404.1520(a)(4)(iv). Residual functional capacity is defined as what the claimant "can still do despite [his] limitations." 20 C.F.R. §404.1520(a)(1). If claimant has the residual functional capacity to meet the physical and mental demands of his past work, the Commissioner must find him not disabled. 20 C.F.R. §404.1520(f). Finally, if the claimant cannot perform any past relevant work, the Commissioner must determine, on the basis of the claimant's age, education, work experience, and residual functional capacity, whether he can perform any other work. 20 C.F.R. §404.1520(a)(4)(v). If he cannot, the Commissioner will find him disabled. 20 C.F.R. §404.1520(g).

   The claimant bears the initial burden of proving his impairment prevents him from returning to past relevant work. <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 118 (3d Cir. 2000). If claimant satisfies the first four steps, then the burden shifts to the Commissioner to

prove the existence of work in significant numbers in the national economy that the claimant could perform. Id.

**C. Scope of Review**

A reviewing court must uphold the Commissioner's factual findings if they are supported by substantial evidence. 42 U.S.C. § § 405(g), 1383 (c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence means "more than a mere scintilla." Richard v. Perales, 402 U.S. 389, 401 (1971); (quoting, Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (quoting, Consol. Edison, 305 U.S. at 299). However, substantial evidence "does not mean a large or considerable amount of evidence…" Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence may be "less than a preponderance." Stunkard v Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988). Some types of evidence will not be 'substantial'. For example:

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting, Kent v. Schweiker, 710 F.2d 110, 114. (3d Cir. 1983)).

"The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner." Claussen v. Chater, 950 F. Supp. 1287, 1292 (D.N.J. 1996); (citing Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 387, 290 (3d. Cir. 1983)). The standard avoids "deference to inferences drawn

from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). "The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988)). Therefore, a court may not "set the Commissioner's decision aside if it is supported by substantial evidence, even if [the reviewing court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The reviewing court has a duty to review the evidence in its totality. Daring v. Heckler, 727 F.2d 67, 70 (3d. Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf, 972 F. Supp. at 284 (quoting Willibanks v. Sec'y of Health & Human Services., 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the Court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581, 584-86 (3d. Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is essential to a meaningful court review:

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977). Nevertheless, the Court is not "empowered to

9

weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### III. ANALYSIS

Plaintiff contends that the ALJ erred as a matter of law by 1) failing to give adequate weight to the evidence submitted by treating and examining sources and 2) applying the incorrect legal standard to evaluate the Plaintiff's obesity. (Pl.'s Br. at 1). For the reasons set forth below, the Court affirms the decision of the ALJ.

**A. The ALJ Appropriately Discussed Important Supportive Evidence**

Plaintiff argues that the ALJ ignored and mischaracterized evidence. Specifically, she contends that the ALJ failed to mention her back and left shoulder pain and her need to ambulate with a cane. Plaintiff also argues that the ALJ failed to accord proper weight to the opinions of Dr. Badin and other physicians. (Pl.'s Br. at 11-14). A review of the ALJ's decision and a close inspection of the record do not support such assertions.

The ALJ did not fail to mention Plaintiff's alleged back and left shoulder disability. In his decision, the ALJ considered the aggregate medical and non-medical evidence in the record, and concluded that the present conditions did not establish that Plaintiff was disabled. (R. at 15-20). In addition, the majority of the medical reports did not address Plaintiff's complaints of back and shoulder pain, nor her use of a cane. (R. at 131-39, 142-160). Plaintiff argues that Dr. Badin's opinion addressed the osteoarthritis in her back and shoulders and the need to use a cane, but this argument is not supported by the record. (Pl's Br. at 11). Rather, Dr. Badin failed to mention or attribute the cause of the Plaintiff's disability to osteoarthritis in the back and

10

shoulders. (R. at 127).

     A treating source's opinion on the nature and severity of an individual's impairment is entitled to controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(d)(2). Here, the ALJ did not find Dr. Badin's assessment to be consistent with the assessments submitted by other doctors. Dr. Badin's progress notes did not identify complaints or findings as to most of Plaintiff's allegedly disabling conditions, focusing instead on her left knee condition. Drs. Schacter and Miranda, state agency medical consultants, found that Dr. Badin's opinion was not substantiated by the objective medical evidence of record. (R. at 127). In addition, when Dr. Vassallo examined Plaintiff in December 2001, he noted only mild degenerative joint disease in the left knee. (R. at 201). None of the other physicians who examined Plaintiff or reviewed the medical evidence of record opined that Plaintiff was disabled. (R. at 188-190, 213-15, 229-41). Because substantial evidence in the record contradicted Dr. Badin's opinion, the ALJ correctly determined that his opinion was not entitled to controlling weight. The ALJ correctly noted that "Dr. Badin's assessment of disability and the claimant's inability to work is unsupported by his own objective findings or the record as a whole." (R. at 19).

     Plaintiff also contends that the ALJ erred in ignoring her need to ambulate with a cane. This argument is without merit. The ALJ clearly examined the evidence of record and the Plaintiff's testimony in rendering his decision. Furthermore, the doctors' records do not consistently stipulate that the Plaintiff used or needed a cane to ambulate. (R. at 198, 214-15). Indeed, Dr. Vassallo specifically found in his summary and conclusions that Plaintiff "did not

need any hand-held assistive device for ambulation." (R. at 200-203). Consequently, the ALJ did not rely on a false understanding of the record as the Plaintiff suggests.

Contrary to the Plaintiff's contention, the ALJ based his residual functional capacity determination on substantial evidence of record. Based on the entire record, the ALJ concluded that the evidence fails to support the claimant's assertions of total disability. (R. at 19). The ALJ noted that although the claimant suffers from severe impairment, the evidence establishes that she has the capacity to perform many basic work activities. (R at 19). For example, the ALJ found that the Plaintiff could perform work involving lifting and carrying objects weighing up to ten pounds, sitting up to six hours, and standing and walking up to two hours in an eight-hour day. (R. at 19). This conclusion was based on the finding that Plaintiff had the residual functional capacity, under step five of the disability analysis, to perform a full range of sedentary work. (R. at 20).

**B. The ALJ Properly Evaluated Plaintiff's Obesity**

Plaintiff alleges that the ALJ did not give sufficient consideration to her obesity in deciding her claim and erred by applying the incorrect legal standard in evaluating her obesity. (Pl.'s Br. at 15-20). However, upon review of the record, it is evident to the Court that the ALJ considered both Plaintiff's obesity and her testimony in reviewing the medical evidence and making his decision. (R. at 16-18). Further, the ALJ listed obesity as a severe impairment in step two of the sequential evaluation. (R. at 17).

Despite the ALJ's finding that Plaintiff's obesity is a severe impairment, the evidence must demonstrate that the impairment has caused functional limitations that prevent Plaintiff from engaging in any substantial gainful activity for Plaintiff to be considered disabled under the

12

Act. Alexander v. Shalala, 927 F. Supp. 785, 791 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996).  Here, because the record does not indicate that Plaintiff's obesity prevents her from engaging in any substantial gainful activity; the ALJ gave sufficient consideration to Plaintiff's obesity in deciding her claim.

The ALJ also stated that he fully considered the Commissioner's Social Security ruling with respect to Plaintiff's obesity. (R. at 18).  Plaintiff disagrees, asserting that the ALJ used the wrong legal standard, relying on SSR 003p in evaluating her condition, instead of SSR 02-1p, which superseded SSR 003p in May 2000. (Pl.'s Br. at 16).  The Commissioner contends that the ALJ actually applied SSR 02-1p, and in any event, the analysis employed in both rulings is the same. (Def.'s Br. at 12).

The Court has reviewed both SSR 003p and SSR 02-1p in connection with the ALJ's decision.  While the ALJ cited to SSR 00-3 in the decision, he appears to have applied SSR 02-1p.  It is obvious that the ALJ applied SSR 02-1p because he specifically considered whether Plaintiff satisfied the criteria of section 1.02A, which is only discussed SSR 02-1, and not the prior SSR 003p. (R. at 18).  Therefore, the ALJ did apply the proper standard, and his citiation to SSR 00-3p appears to be a clerical error.  Further, the ALJ properly analyzed the rules and applied the Act.  In sum, the ALJ correctly considered Plaintiff's obesity and concluded that her impairments did not meet or equal a listing as she still has the residual functional capacity for sedentary work.

13

## IV. CONCLUSION

For the reasons stated above, this Court affirms the Commissioner's determination that the Plaintiff was not disabled.  An appropriate Order accompanies this Opinion.


Date:   June 16, 2006
Orig:   Clerk's Office
cc:     All parties
        File

                                         S/ Dennis M. Cavanaugh
                                         DENNIS M. CAVANAUGH, U.S.D.J.